UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA  )
           )
           )  Case Number 1:22-CR-00065
v.           )
           )
           )
JONATHAN EASON    )

## Defendant's Motion to Dismiss

Comes now the Defendant, Jonathan Eason, (hereinafter "Mr. Eason"), by counsel, and moves the Court to dismiss the indictment on the grounds that 18 U.S.C. § 922(g)(1) is unconstitutional as-applied.  Mr. Eason's motion is based on the Second Amendment and the framework set forth in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

In addition, Mr. Eason moves to dismiss on the basis that § 922(g)(1) is unconstitutionally vague in violation of the Fifth Amendment.  As to vagueness, Mr. Eason raises a facial and as-applied challenge.  Mr. Eason moves for dismissal under Federal Rules of Criminal Procedure 12(b)(1) and 12(b)(3)(B).

**I.**  *The Court Should Grant Dismissal under the Bruen Framework.*

  **A.**  **Background.**

On November 16th, 2022, the government filed a single count indictment, charging Mr. Eason with violating § 922(g)(1).  See ECF No. 1, Indictment.  Section 922(g)(1) prohibits firearm possession by a person who has been convicted of a crime in any court punishable by a prison term exceeding one year.  *See* § 922(g)(1).

The government alleges that on October 22nd, 2022, Mr. Eason possessed a

firearm.  *See ECF No. 1*, p. 1.  At the time of Mr. Eason's alleged September 2022 firearm possession, he had been convicted of the following felony convictions: 2021 Intimidation as a Level 5 Felony and Strangulation as a Level 6 Felony under Allen County Superior Court cause number 02D05-2103-F5-112.  *See ECF No. 1*.  Also, Mr. Eason has a prior conviction from Baltimore Maryland from 2012 for Possession of a Controlled Substance.

Section 922(g)(1) in constitutional terms, sweeps broadly.  Under the statute, certain qualifying criminal convictions result in the permanent loss of the constitutional right to possess a firearm, and criminal prosecution for doing so.

The question presented is whether Mr. Eason's charge under § 922(g)(1) stemming from his alleged September 2021 felony convictions and based on his individual felony criminal history violates the Second Amendment under the *Bruen* framework.  Mr. Eason urges the Court to find that his criminal history provides no historical basis supporting his permanent disarming and criminal prosecution.  The government cannot satisfy its *Bruen* burden here to show a historical tradition of disarming a person based on Mr. Eason's minimal felony criminal history.

**B.**   **The state of *Bruen* litigation favors Mr. Eason's challenge here.**

As the Court is aware, the Supreme Court decided *Bruen*, in June of 2022.  In the roughly 18 months since the Supreme Court decided *Bruen*, civil and criminal litigants have filed myriad constitutional challenges to federal and state firearm restrictions, regulations, sentencing enhancement provisions, and criminal prohibitions in federal and state courts.  Among these post-*Bruen* challenges, and likely the most frequently challenged criminal statute, is § 922(g)(1).

4

To the extent that a pattern has emerged in national *Bruen* litigation, it is that first, the circuit courts have generally been more receptive to *Bruen* challenges. Specifically, the circuit courts have held the government to a more exacting, demanding historical standard under *Bruen*. That circuit court trend has been evident in the § 922(g)(1) context as well. Second, at the district court level, there has been a recent spate of successful defendant-based Second Amendment challenges to § 922(g)(1) filed under the Federal Rules of Criminal Procedure.

For example, initially post-*Bruen*, at the district court level, the government prevailed in every Second Amendment challenge to § 922(g)(1). However, at the district court level, the recent tide is titling in favor of defendant- based Second Amendment/*Bruen* as-applied challenges to § 922(g)(1) and courts are now regularly granting motions to dismiss indictments challenging the statute under the Second Amendment. *See* <u>*United States v. Bullock*</u>, --- F. Supp. 3d ----, 2023 WL 4232309 (S.D. Miss. June 28, 2023); <u>*United States v. Forbis*</u>, Case No. 23-CR-133-GKF, ECF No. 37 (N.D. Okla. Aug. 17, 2023); <u>*United States v. Quailes*</u>, --- F. Supp. 3d  2023 WL 5401733 (M.D. Pa. Aug. 22, 2023).

In *Bullock*, the Court determined that the defendant's charge under § 922(g)(1) based on a 1992 state aggravated assault and manslaughter charge violated the Second Amendment as applied. F. Supp. 3d ----, 2023 WL 4232309 (S.D. Miss. June 28, 2023). The Court reasoned that:

The question presented appears simple: has the government demonstrated that, as to Mr. Bullock, the federal felon-in-possession ban is consistent with America's historical tradition of firearm regulation. The government says the answer is also simple: yes. It points to more than 120 U.S. District Court decisions which recently determined that the government had met its burden—at least in those cases.

This Court is not so sure. The government's citation to the mere volume of cases is not enough. There also is doubt about the process those cases used to determine the history of the felon-in-possession ban. In none of those cases did the government submit an expert report from a historian justifying felon disarmament. In none of those cases did the court possess an amicus brief from a historian. And in none of those cases did the court itself appoint an independent expert to help sift through the historical record.

[T]he standard announced by the Supreme Court in *Bruen* is the law of the land. It must be enforced. Under that standard, the government has failed to meet its burden . . . .

The government's arguments for permanently disarming Mr. Bullock, . . . rest[s] upon the mirage of dicta, buttressed by a cloud of law review articles that do not support disarming him. In *Bruen*, the State of New York presented 700 years of history to try and defend its early 1900s-era gun licensing law. That was not enough. *Bruen* requires no less skepticism here, where the challenged law is even younger [passed in the mid-twentieth century].

**Id**. at *1-3 (internal citations omitted).

In support of that reasoning, the Court stated that the "civic virtue" theory of Second Amendment interpretation, that the Amendment does not apply to convicted felons, "errs in several ways." 1 **Id**. at *20. In addition, the Court stated that the government's proffer of early, but rejected, state ratifying convention proposals, capital punishment analogies, and law review articles supporting § 922(g)(1)'s constitutional viability failed the *Bruen* step-two historical analysis. *See* **Id**. at *21-25; *see also* **Id**. At *23 (disagreeing with *Rice*, that the possibility of capital punishment for the enumerated early republic felonies established a history and

6

tradition of permanently criminally disarming persons with a prior felony conviction). The Court, additionally, placed dispositive weight on the government's failure to develop the evidentiary record. *See e.g.*, ___*Id*.___ at 31 (reasoning that "[t]he United States was thus well aware that *Bruen* not only placed the burden squarely on it to develop the historical record, but also put it on notice that its failure to do so might be decisive").

The Court further reasoned that because the government had failed to prove that so-called dangerousness or violence classifications served as a *general*, practiced historical basis to permanently deprive the exercise of Second Amendment rights from the time of the Bill of Rights' ratification, it had, accordingly, also failed to establish that Mr. Bullock'*s* permanent disarmament was similarly warranted based on his 1992 conviction's violence or dangerousness classification. *See e.g.*, ___*Id*.___ (reasoning that "[t]he government's violent-and-dangerous argument is also out of sequence, as the government still had not (and has not today) proven the predicate question: that there is a historical tradition of disarming either the violent or the dangerous. The government had to prove the underlying principle of disarmament before it could apply it to Mr. Bullock.").

In *Forbis*, the defendant had three prior felony convictions:

1. Unlawful Possession of Methamphetamine, Case No. CF-98-159, in the District Court of Ottawa County, State of Oklahoma, on August 17, 1998;

2. Driving Under the Influence 2nd and Subsequent Offense, Case No. CF- 2004-243, in the District Court of Ottawa County, State of Oklahoma, on November 3, 2004; and

3. Possession of a Controlled Dangerous Substance Methamphetamine, Case No. CF-2016-499A, in the District Court of Ottawa County, State

of Oklahoma, on March 16, 2018.

-Case No. 23-CR-133-GKF, ECF No. 37, p. 2 (W.D. Okla. Aug. 17, 2023).

At step-one of *Bruen*, the Court concluded that "Mr. Forbis is one of the people" the Second Amendment protects and § 922(g)(1), textually, regulates conduct protected by the Second Amendment. **_Id_**. at 6; *see also* **_Id_**. at 7 (internal citations omitted) ("The government attempts to add a historical tradition burden into *Bruen's* first step by discussing the purported historical tradition of regulating firearm use by felons, non-law- abiding citizens, non-conformists, the mentally ill, and other classes of people. But *Bruen* makes clear that the first step is one based *solely on the text of the Second Amendment* to determine if it presumptively protects an individual's conduct—a presumption that the United States can *then* rebut with history and tradition.").

At *Bruen* step-two the Court found that "our Nation's history and tradition does not support disarming a person merely because they have engaged in felonious conduct, it [rather] support[s] a different proposition: 'that the legislature may disarm those who have demonstrated a proclivity for violence' through past violent, forceful, or threatening conduct (or past attempts at such conduct)." **_Id_**. at 11 (quoting *United States v. Harrison*, No. CR-22-00328-PRW, 2023 WL 1771138, at \*15 (W.D. Okla. Feb. 3, 2023).

The Court noted that the government had failed to carry its burden to show that Mr. Forbis' non-violent felony convictions fall within that narrow historical category of disarming so-called dangerous persons. *See e.g.*, **_Id_**. (internal citations omitted) (stating that "to put it another way, the historical record demonstrates that the public

8

understanding of the scope of the Second Amendment [at ratification] was tethered to the principle that the Constitution permitted the dispossession of persons who demonstrated that they would present a danger to the public if armed."). In addition, the Court rejected the government's argument that the defendant's drug possession charges demonstrated dangerousness. *See e.g.*, **_Id_**. (internal citations omitted) (reasoning that "the government also misses the mark with its argument that Mr. Forbis'[] convictions for drug possession flag him as having an above average chance of committing further crimes. By relying on such predictions about future crime, the government is asking the Court to engage in the type of interest-balancing *Bruen* rejected."); *see also* **_Id_**. (internal citations omitted ("[s]tripping a person's fundamental rights based on projected crimes untethered from past dangerous actions is a risky game indeed."). Indeed, Mr. Eason's criminal history here, with 1 felony drug possession conviction and one conviction for a strangulation and intimidation, which is admittedly more serious, but still Mr. Eason has less felony convictions than the defendant in Forbis'.

In **_Quailes_**, the Court held that § 922(g)(1) violates the Second Amendment as applied to a defendant with four recent drug trafficking convictions (i.e., possession with intent to distribute heroin and cocaine). WL 5401733, *1. The Court noted that the defendant, though on parole, remained a part of the people the Second Amendment protected and that his conduct of firearm possession fell within the Second Amendment's text. *See* **_Id_**. at *8 (The Court rejecting government's argument that the defendant must demonstrate that his possession was related to self-defense in the first instance because the conduct proscribed by the statute is mere possession,

which is clearly covered by the Second Amendment's plain text: "[T]here cannot be a requirement for the defendant to state his purpose for possessing the firearm.").

At *Bruen* step two, the Court reasoned that, the government must undertake the historical analysis and show that "a historical analogue for criminalization of firearm possession by a person who, like Quailes, has been convicted of a felony drug trafficking offense." *Id*. at *10.   The Court noted that this is a specific, demanding test, that the government was unable to meet by referring to a generalized tradition of disarming "those who were deemed dangerous, irresponsible, or unlikely to abide by the law." *Id*. at *11.   The Court found this comparison is "too broad" and in any event, the government provided no "explanation of how the earlier regulations compare in mechanics or purpose to Section 922(g)(1)." *Id*. at *12.   The Court, therefore, rejected the government's argument that there's a national tradition of disarming those who pose a generalized danger to society.   *See Id*.

The Court further noted that even if such a tradition existed, it is an unworkable standard.   There is no "clear definition" of "dangerous," and accordingly, the Court could not determine under the *Bruen* standard whether disarming someone with a prior conviction for a particular crime is consistent with the "dangerousness" tradition.   *Id*.

At the circuit level, unlike the district court level, however, as noted above, judicial treatment of *Bruen* firearm challenges has been receptive to, or not rejected, Second Amendment challenges to the government's authority to regulate assorted forms of protected firearm possession.   An example, on August 9, 2023, in *United States v. Daniels*, --- F.4th        , 2023 WL 5091317 (5th Cir. 2023), the Fifth Circuit

Court of Appeals found that 18 U.S.C. § 922(g)(3) violated the Second Amendment as-applied under the *Bruen* framework. Section 922(g)(3) criminalizes firearm possession by a controlled substance "user" or "addict." In <u>*Daniels*</u>, the Fifth Circuit dismissed the § 922(g)(3) prosecution -- based on firearm possession by a marijuana user -- under the Second Amendment after a jury found the defendant guilty. *See* <u>*Id*</u>. at *1.

Some notables from the opinion. The Court there found that the defendant marijuana user remined part of the people the Second Amendment protects, *see* <u>*Id*</u>. at *3, possessing a firearm as a marijuana user is conduct protected under the Second Amendment, *see* <u>*Id*</u>., and the government failed to satisfy its burden of proffering sufficient evidence showing a history and tradition of disarming marijuana users from the time of the Second Amendment's ratification, 1791. *See* <u>*Id*</u>. at *15. The Court applied the lower relevantly similar (not the more exacting distinctly similar) standard, and nonetheless, concluded the government's proffered historical analogies, failed the *Bruen* historical test. *See* <u>*Id*</u>.

Analyzing the history, the Court found that colonial, early republic, and reconstruction era intoxication restrictions on firearm possession failed because those earlier restrictions related to active intoxication or possessing a firearm while under the intoxicating effects, whereas § 922(g)(3) applies to use or addiction without regard to active drug impairment. *See* <u>*Id*</u>. at *6-8. Next, and relatedly, the Court found that historical analogies relating to restricting firearm possession based on mental illness also failed as § 922(g)(3) applies whether the drug user or addict is under or suffering from an active drug induced mental impairment or not. *See* <u>*Id*</u>. at *9-10. Next, the

11

Court found that analogies to disarming based on "dangerousness" failed as colonial and early republic dangerousness firearm restrictions related to political disloyalty, some perceived threat to the nascent state, or were based on classifications such as religion, race, or tribal affiliation that are constitutionally unenforceable, and normatively and morally "repugnant" today. *Id.* at *12, n.33.  The Court found that marijuana use and firearm possession do not pose a danger as understood in 1791.

Finally, the Court opined that § 922(g)(3) is flawed in that controlled substance "use" can be inferred from *any* potential marijuana use within the past year.  *See Id.* At *8; *see also* 27 C.F.R. § 478.11.  The Court concluded that no concept of historical intoxicant use as a firearm restriction could be analogized to § 922(g)(3)'s temporal scope applying the concomitant C.F.R.   As to burden, the Court stated that the government failed to "find and explicate the historical sources that support the constitutionality of § 922(g)(3) . . . ."  (citing *United States v. Rahimi*, 61 F.4th 443, 455 (5th Cir. 2023) (Fifth Circuit Court of Appeals finding that 18 U.S.C. § 922(g)(8) (prohibited firearm possessor under a domestic restraining order) (violated the Second Amendment under the *Bruen* framework.).  (The United States Supreme Court has currently granted Certiorari in this matter.)

In the § 922(g)(1) context circuit treatment has held the government to a demanding standard.  The Third Circuit Court of Appeals found that § 922(g)(1) violated the Second Amendment as-applied to the civil challenger based on his previous conviction for making a false statement.  *See Range v. Attorney General*, 69 F.4th 96, 103 (3d Cir. 2023).  The Court found that the challenger, despite his non-violent conviction, remained part of the people the Second Amendment protects, *see*

*__Id__*. at 98, 103, that possession of a firearm is conduct the Second Amendment protects, *see __Id__*. at 103, and that the government had not carried its burden to demonstrate that the challenger's criminal history provided a historical basis, from the time of the Second Amendment's ratification, to permanently deprive him of his Second Amendment right to possess a firearm. *See __Id__*. at 103-104.

The Court rejected the government's claim (advanced in *Rice*) that capital punishment for early republic felonies established a workable history to apply to the challenger. *See __Id__*. at 105 (noting "[t]hat Founding-era governments punished some nonviolent crimes with death does not suggest that the particular (and distinct) punishment at issue—lifetime disarmament—is rooted in our Nation's history and tradition. The greater does not necessarily include the lesser: founding-era governments' execution of some individuals convicted of certain offenses does not mean the State, then or now, could constitutionally strip a felon of his right to possess arms if he was not executed.").

The Court also rejected that early republic status restrictions on firearm possession could be analogized to the firearm restriction at issue based on a previous criminal conviction. *See e.g.*, *__Id__*. at 104-05 (reasoning that the government's attempt to identify status historical analogues failed:

The "[g]overnment argues that legislatures traditionally used status-based restrictions to disarm certain groups of people............................Apart from the fact that those restrictions based on race and religion now would be unconstitutional under the First and Fourteenth Amendments, the [g]overnment does not successfully analogize those groups to Range and his

individual circumstances."); *see also **Id***. (reasoning that the Court need not decide whether "dangerousness or violence [is] the touchstone [of firearm disarmament] . . . . because the [g]overnment did not carry its burden to provide a historical analogue to permanently disarm someone like Range, whether grounded in dangerousness or not.").

Similarly, in *Atkinson v. Garland*, 70 F.4th. 1018 (7th Cir. 2023), the Seventh Circuit recently reviewed a pre-enforcement challenge to 922(g)(1)'s constitutionality. The Court remanded to the district court for review of the historical sources justifying the claimant's disarmament at *Bruen* step-two— specifically whether the claimant's non- violent (a 1998 federal fraud conviction) criminal history justified permanent, criminal disarmament. *See **Id***. at 1020. Crucially, the Court did not find § 922(g)(1) categorically constitutional, nor did it find that felons broadly as a class of persons are constitutionally subject to permanent disarmament. *See **Id***. at 1023 (need briefing to resolve whether felons are part of the people protected by the Second Amendment).

*Rahimi*, and *Range*, and *Atkinson* demonstrates that under *Bruen* the government needs to proffer substantial history to justify the specific disarming. *See e.g.*, ***Id***. at 1022 (rejecting that Second Amendment challenges to § 922(g)(1) may be decided by considering language in *District of Columbia v. Heller*, 554 U.S. 570 (2008), or *McJonathan v. City of Chicago*, 561 U.S. 742 (2010), without regard to *Bruen*, but rather a reviewing court must "undertake the text-and history inquiry [under *Bruen*] the Court so plainly announced and expounded upon at great length."). "The new approach anchors itself exclusively in the Second Amendment's text and

14

the pertinent history of firearms regulation, with the government bearing the burden of affirmatively proving that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 1019 (internal citations omitted); *see also Id*. at 1024 (the "government must conduct a more substantial historical analysis on remand" and the district court is best suited to develop the evidentiary record and "consider how the breadth, severity, and the underlying rationale of the historical examples stack up against § 922(g)(1).").  The Court, additionally, left the type of evidence that may be admitted to the district court's discretion, but offered examples of the type of evidence that may be admitted including amicus briefs, and "detailed" evidence showing a comparable history of "enforcement, impact, or judicial scrutiny" as evinced under § 922(g)(1) and as it relates to the Mr. Eason's disarmament here.

### C.   Argument: the government cannot satisfy its *Bruen* burden to show a comparable history of disarming a person based on Mr. Eason's criminal history.

[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  To justify its regulation, the government may not simply posit that the regulation promotes an important interest.  Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.  Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

-*Bruen*, 142 S. Ct. at 2126.

The above is offered to demonstrate the salient feature of circuit court treatment and recent district court treatment of, and reasoning in, *Bruen* challenges:

the government carries a "fulsome[,]" substantial burden to show that a challenged firearm regulation is consistent with the nation's history and tradition of firearm regulation from the time of the founding, 1791. *Atkinson*, 70 F.4th at 1022.  And, that this burden cannot be satisfied by relying on case law antedating *Bruen* or absent concrete examples analyzing the challenged firearm regulation's historical consonance as it applies to the charged defendant.  That is the burden here, and it is a burden the government cannot meet in Mr. Eason's case.

Mr. Eason's conduct, possession of controlled substance and intimidation and strangulation, falls within the Second Amendment.   *See Daniels*, 69 F.4th at 103.  Thus, his conduct is presumptively protected by the Second Amendment.  And, the government needs to prove the historical restriction before it may apply it to Mr. Eason.  *See e.g., Bullock*, 2023 WL 4232309, *31 (reasoning that "the government had to prove the underlying principle of disarmament before it could apply it to Mr. Bullock.").

The government's primary arguments in support of § 922(g)(1)'s constitutionality post-*Bruen* have mainly coalesced around felons' categorical exclusion from Second Amendment protection or felons not being part of the people the Second Amendment protects (not law abiding), that firearm restrictions on felons as a class have been constitutionally tolerable from the time of the Founding, and those restrictions are a sufficient historical analogue or proxy for § 922(g)(1).

As to the first argument, the government has advanced this position by largely citing to *Heller's* dicta regarding long-standing prohibitions on felon disarmament. However, *Atkinson* made clear that approach will not suffice.  *See e.g.*, *Id.* at 1022-23

(emphasis added) (Court reasoning that "[s]ince oral argument, the government has also urged us to conclude, *without any historical analysis*, that the plain text of the Second Amendment does not cover felons    We cannot resolve the issue without the benefit of more substantial briefing."). *Heller* is not enough and whether Mr. Eason is part of the people cannot be resolved by reliance on *Heller*, but by consideration of history and tradition that the government carries the burden to proffer at *Bruen's* second step.

In addition, the Court here should consider *Range's* reasoning on this point. The Third Circuit found that Mr. Range remained "one of the people protected by the Second Amendment . . ." 69 F.4th at 106. The Court noted that the criminal histories of the plaintiffs in *Heller*, *McJonathan*, and *Bruen* were not at issue there, unlike a prosecution under § 922(g)(1). *Id.* at 101. Next, "[u]nless the meaning of the phrase the people varies from provision to provision—and the Supreme Court in *Heller* suggested it does not—to conclude that Range is not among the people for Second Amendment purposes would exclude him from those rights as well.  And we see no reason to adopt an inconsistent reading of the people."    *Id.* at 102.

Third, the Court adopted the reasoning of Justice Amy C. Barrett in *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019), in which she reasoned that all people have the right to keep and bear arms, though the legislature may constitutionally "strip certain groups of that right." *Id.* Fourth, the phrase law abiding is to expansive and unwieldy to apply. *See Id.* (internal citations omitted) (reasoning that "[w]e are confident that the Supreme Court's references to law-abiding, responsible citizens do not mean that every American who gets a traffic ticket is no longer among the

17

people protected by the Second Amendment.").  And, analogizing or referring to early felony laws cannot resolve the question of Second Amendment protection as a matter of historical comparison because "felonies [now] include a wide swath of crimes, some of which seem minor.  And some misdemeanors seem serious.   As the Supreme Court noted recently: a felon is not always more dangerous than a misdemeanant." (internal citations omitted).

"At root, the Government's claim that only law-abiding, responsible citizens are protected by the Second Amendment devolves authority to legislators to decide whom to exclude from the people.  We reject that approach because such extreme deference gives legislatures unreviewable power to manipulate the Second Amendment by choosing a label" and would invite the very balancing *Bruen* rejected.  **_Id_**.

Next, as to the historical consistency of § 922(g)(1), this Court too, should strongly consider *Range's* historical survey.To begin, § 922(g)(1)'s precursor, the National Firearms Act of 1934, was not longstanding enough under *Bruen*. Next, longstanding prohibitions on classes of persons, such as those based on political disloyalty could not support the disarmament of Mr. Range specifically.   *See* **_Id_**. at 104-105 (noting that founding-era firearm restrictions on groups distrusted by the federal government would be "far too broad" to justify Mr. Range's individual disarmament.).

18

The reality is that felon-disarmament laws, which did not appear in the United States until the mid-20th century, were unknown to the generation that ratified the Second Amendment.  Justice Barrett's historical survey – supports the proposition that felon firearm possession was historically, categorically protected by the Second Amendment except in the case of *dangerous* individuals, and not for all felony acts or all felons generally.  *See e.g.*, <u>Barr</u>, 919 F.3d 437, 451 (7th Cir. 2019) (emphasis added) (then Judge Barrett dissenting that "[h]istory is consistent with common sense: it demonstrates that legislatures have the power to prohibit dangerous people from possessing guns.  But that power extends only to people who are dangerous.  Founding-era legislatures did not strip felons of the right to bear arms simply because of their status as felons  18 U.S.C. § 922(g)(1)['s]  .  .  . dispossession of all felons—both violent and nonviolent—is unconstitutional as applied"). *See e.g.*, <u>Id</u>. at 451, 464 (then Judge Barrett reasoning that "no historical practice supports a legislative power to categorically disarm felons because of their status as felons" and that "[h]istory does not support the proposition that felons lose their Second Amendment rights solely because of their status as felons.").

To that point, and as applied here, though Mr. Eason has 2 previous felony convictions, his permanent criminal disarmament based on those convictions, as noted by now Justice Barrett; is not historically justified.  Indeed, his one felony conviction for controlled substance possession (not distribution), like in *<u>Forbis</u>*, for which criminal sanction was not nationally regulated until the twentieth century, and for which "use" as a concept the Fifth Circuit in *<u>Daniels</u>* found, does not support

19

criminal disarmament.  Further, Mr. Eason's conviction for strangulation and intimidation lacks a historical basis to justify his permanent criminal disbarment.

Again, Justice Barrett's *Kanter* dissent notes that in 1791, legislatures prohibited individuals from bearing arms only when the government judged that doing so was necessary to protect the public from dangerousness.  *See Kanter*, 919 F.3d at 451; *see also **Id**.* at 453.  The loss of Second Amendment rights did not apply to all felons generally or comparable felons based on Mr. Eason's previous convictions for drug possession and intimidation and strangulation.

As to the types of evidence, the Court in *Atkinson* cautioned that the government carries a legitimate, substantial burden under *Bruen* and the Court must hold the government to that burden:

> The government's brief before us includes some historical analysis, *but nothing close* to what would satisfy *the demanding standard set forth in Bruen*.  In addition to some Founding-era commentary, the government mentions that felons like Atkinson were historically subject to execution and estate forfeiture, as well as the loss of other civic rights.  No doubt these historical details may prove relevant on remand. But the government's analysis as a whole falls well short of *Bruen's* demands.  Remember what the Court itself did in *Bruen* after rejecting a means-end approach and announcing the text-and-history standard—it rolled up its sleeves and examined a *wealth of laws* and commentary spanning several centuries, paying close attention to the enforcement and impact of various regulations. The government points us to only a couple of isolated historical facts and incidents, offering no detail about their application and import.  This does not suffice under *Bruen*.

70 F.4th at 1022.

The proper historical inquiry is thus whether the substance of the historical examples evinces a comparable pattern of firearm limitation as the challenged restriction. *See* ***Id****.* at 1024. To the extent possible, the Court here should consider any details regarding the "history of enforcement, impact, or judicial scrutiny of these [proffered] laws . . . ." ***Id****.*

An example, in *Rice*, the government attempted to satisfy its burden by analogizing to capital punishment (an approached rejected in *Range*) and estate forfeiture. But the government offered little actual evidence as to how those comparisons were putatively similar to § 922(g)(1), or more critically how those comparisons measured against Mr. Rice's criminal history as a basis for permanent disarmament. That will not do under *Atkinson* where the proffered history must offer sufficient detail as to the historical nexus between the regulation today and the historical tradition. Simply listing analogues is not adequate. *See Atkinson*, F.4th at 1024 ("The parties should not stop at compiling lists of historical firearms regulations and practices.").

Furthermore, in *Rice*, the government proffered history principally through law review citations without an analysis or explanation of whether § 922(g)(1) or Mr. Rice's criminal disarmament was based "on a general societal problem that has persisted since the 18th century" or whether it may proceed by analogy because the issue presented was unprecedented at the time of the founding. *See* ***Id****.* at 10-11. The government referenced both standards –whether the challenged firearm restriction was a general problem persisting from the 18th century or whether it

was unprecedented – but it made no effort to distinguish the two.  Furthermore, though this Court considered the relevantly similar, distinctly similar dichotomy, it did not address, and consequently resolve, the question of whether § 922(g)(1) or Mr. Rice's conduct addressed an 18th century general societal concern, and if so, whether addressed through materially different means.  *See Rice*, 2023 WL 2560836, *4, n.5.  In *Atkinson*, the Court stated that this issue needed to be resolved in the first instance at *Bruen's* second step.  *See e.g.*, 70 F.4th at 1023 (quoting *Bruen*, 142 S. Ct. at 2131 (directing the district court to consider the question of "[d]oes § 922(g)(1) address a 'general societal problem that has persisted since the 18th century?' If this problem existed during a relevant historical period, did earlier generations address it with similar or 'materially different means?'"); *see also Bruen*, 142 S. Ct. at 2131 ("[W]hen a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment.  Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional.").

This is not to suggest that the government may never meet its *Bruen* burden or that its burden is insuperable.  The above, rather, is offered to show that its effort so far is inconsistent with *Bruen* and *Atkinson* and falls short of what the Court now requires as historical evidence to justify deprivation of the exercise of

protected Second Amendment interests.   Mr. Eason asks this Court to hold the government to its burden here, a burden it cannot meet.

## II.   Vagueness challenge

Mr. Eason also moves for dismissal as § 922(g)(1) is unconstitutionally vague facially and as-applied.

### A.   Applicable Law

The Fifth Amendment protects against the deprivation of life, liberty, or property,

"without due process of law ........ [The]  [g]overnment violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015).  "When Congress passes a vague law, the role of courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite Congress to try again."  *United States v. Davis*, 588 U. S. ——, ——, 139 S. Ct. 2319, 2323, (2019). The Supreme Court's "doctrine prohibiting the enforcement of vague laws rests on the twin constitutional pillars of due process and separation of powers."  *Id*. at 2325; *see also Sessions v. Dimaya*, 584 U.S. 138 S. Ct. 1204, 1212-1213 (2018).

"Vague laws contravene the 'first essential of due process of law' that statutes must give people 'of common intelligence' fair notice of what the law demands of them." *Davis*, 139 S. Ct. at 2325 (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)).  "Vague laws also undermine the Constitution's separation of

powers and the democratic self-governance it aims to protect.  Only the people's elected representatives in the legislature are authorized to make an act a crime." *Id*. (internal citations omitted).  "Vague statutes threaten to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide." *Id*.

As to due process, the void for vagueness doctrine ensures "two due process essentials." *Skilling v. United States*, 561 U.S. 358, 405-06 (2010).  First, a criminal statute must define the offense "in a manner that does not encourage arbitrary and discriminatory enforcement." *Id*. at 402-03.  Second, a criminal statute must define the offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Id*.  "The degree of vagueness that the Constitution [allows] depends in part on the nature of the enactment: In particular, the Court has 'expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.'" *Dimaya*, 138 S. Ct at 1212-13 (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–499 (1982)).  "The prohibition of vagueness in criminal statutes is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law, and a statute that flouts it violates the first essential of due process."     *Johnson*, 576 U.S. at 595 (internal citations omitted).

**B.**     **Section 922(g)(1)'s application violates the Fifth Amendment.**

24

Section 922(g)(1) criminalizes firearm possession based on predicate criminal convictions.  As such, it is a restriction on the Second Amendment and falls within the Amendment's protective ambit. *See Range*, 69 F.4th at 103.  Under *Bruen*, the government may only disarm Mr. Eason, *after it* first affirmatively proves that his disarmament is consistent with the national history and tradition of firearm regulation from the time of the founding.   142 S. Ct. at 2126.   Stated differently, Mr. Eason retains a robust Second Amendment right unless the government proves that history and tradition show that he does not.

A plain reading of § 922(g)(1) affords a criminal defendant, including Mr. Eason, no notice as to whether his prior criminal conviction is an appropriate disarming basis under the Second Amendment.  A "statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally*, 269 U.S. at 391.  Mr. Eason, indeed, all criminal defendants, cannot fairly and plainly read § 922(g)(1) and ascertain whether their prior criminal convictions satisfy the demanding historical test *Bruen* requires and as interpreted by *Atkinson*.  Considering the exacting and rigorous historical test the Seventh Circuit outlined in *Atkinson* for *Bruen* step-two, a criminal defendant such as Mr. Eason cannot possibly know by a fair reading of § 922(g)(1)'s text whether the "breadth, severity, and the underlying rationale of the historical examples stack up against § 922(g)(1)" and support their disarmament. *Atkinson*, 70 F.4th at 1023-34.

To that end, in this case, Mr. Eason could not know by simply reading the challenged statute whether his criminal history warranted his disarmament pursuant to federal law (it is admitted that he was previously convicted of unlawful possession of a handgun pursuant to Indiana law).   He could not know that until the government attempts and successfully satisfies its historical burden here, and until there is a final judicial resolution of the historical issue.  *See Bullock*, 2023 WL 4232309, *31 ("The government had to prove the underlying principle of disarmament before it could apply it to Mr. Bullock."). Certainly, Mr. Eason may have had notice of his felony status generally, however, whether that felony status, based on his specific criminal history, justified the current criminal charge as a matter of constitutional application must still be resolved.   *See Atkinson*, 70 F.4th at 1023.  Under the demanding historical test, the general cannot satisfy the specific.

To illustrate, Mr. Eason is not arguing that whether he, nor any firearm possessor, knew or not that his conduct violated § 922(g)(1) supports a finding of vagueness.   The vagueness argument, is rather, that because his firearm possessory interest is Second Amendment protected *only if* and *unless and until* the government can historically justify the constitutional deprivation, Mr. Eason could not ordinarily and fairly know that he lost his Second Amendment right until after the government makes its requisite, and demanding *Bruen* historical showing.  Mr. Eason has a Second Amendment right to possess a firearm, it is only lost once the government satisfies its burden.  Because Mr. Eason cannot know whether he has

26

lost right to firearm possession, he cannot know whether his alleged possession exposes him to criminal liability until that showing is made.

In addition, that the government is prosecuting Mr. Eason, and indeed may prosecute any such person, for firearm possession based on a type of criminal conviction punishable by a term exceeding one year invites the type of arbitrary or discriminatory enforcement the Supreme Court has cautioned against. *See Johnson*, 576 U.S. at 595. Section 922(g)(1)'s application in this case, and to all convictions punishable by a term exceeding a year, violates the Second Amendment framework based on history and tradition. Whereas the Second Amendment, under *Bruen*, calls for individualized, specific historical assessment of the loss of the Second Amendment right, Mr. Eason's prosecution proceeds from the flawed premise that any prior conviction generally without reference to history justifies the deprivation of Second Amendment protection. Mr. Eason's prosecution is not tailored to the historical restraints the Second Amendment imposes and leaves, as evident here, unfettered prosecutorial discretion to avoid the Second Amendment delimitations.

The government may argue that Mr. Eason should have filed a civil pre-enforcement suit – and that may very will be true. However, nothing in *Bruen*, *Atkinson*, *Range*, or *Rahimi* states that a civil pre-enforcement suit is the exclusive remedy for a Second Amendment challenge. That Mr. Eason should have filed a pre- enforcement suit does not mean he must have. Indeed, a criminal challenge, such as this, is arguably a better forum as the government carries the *Bruen* burden

27

at step-two, as it would at trial.  Asking Mr. Eason to exclusively file a civil suit for judicial resolution of the government's historical burden makes little sense given that it is the government's burden here to satisfy.

## Conclusion

The government carries the burden under *Bruen's* historical test, and it will not be able to satisfy that substantial burden to show that § 922(g)(1) is constitutional as applied to Mr. Eason's and his criminal history.  The Court here should grant his motion to dismiss under Rule 12.  The challenged statute as-applied violates Mr. Eason's rights under the Second Amendment.  In addition, the Court here should dismiss the prosecution under the Fifth Amendment and the attendant vagueness doctrine as § 922(g)(1) provides no fair notice what criminal history warrants deprivation of the protected Second Amendment interest.  The statute is both facially and as-applied violative of the Fifth Amendment.


Dated:  December 19th, 2023                         /s/ David L. Joley
                                                    David L. Joley    #25648-02
                                                    JOLEY LAWFIRM PC
                                                    116 E.  Berry Street
                                                    Suite 500
                                                    Fort Wayne, Indiana  46802
                                                    Telephone:  (260) 426-0242
                                                    Fax: (260) 426-3360
                                                    attorneydavidjoley@msn.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of December, 2023, I electronically filed the foregoing with the Clerk of the Court for the United District Court for the Northern District of Indiana by using the CM/ECF system, and served the same on the United States of America at the known email address for service.

/s/ David L. Joley

28