UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cause No. 1:22-CR-65-HAB |
| ) | |
| JONATHON B. EASON ) | |

## OPINION AND ORDER

Defendant pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). That was the last intelligent thing he did here. After his plea, Defendant lodged a meritless objection to a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B). That objection resulted in an evidentiary hearing, where Defendant lied under oath at every possible opportunity. Today, he reaps the fruit of those poor decisions.

**I.      Factual and Procedural Background**

**A.      *Underlying Facts*[1]**

This case arises out of a conflict between Defendant and his then-girlfriend, Brittney Moses ("Moses") in October 2022. At that time, Moses lived with Defendant and her four-year-old son.

On that fateful evening, Defendant left the shared home, purportedly to pick up his child from a different relationship. He was gone for two hours, during which Moses repeatedly and unsuccessfully attempted to reach him. An argument ensued outside the home when Defendant returned. During that argument, Defendant punched Moses in the nose, causing her to bleed.

Moses retreated into the home and went to a bathroom to attend to her injuries. Defendant entered the bathroom, grabbing Moses by the throat with one hand. With the other hand Defendant

---

[1] The factual recitation is taken from the testimony and exhibits introduced at the July 2024 evidentiary hearing.

pulled out a gun, telling Moses that he was not going back to prison for anyone. Defendant then followed Moses to her bedroom. Defendant climbed on top of Moses, pointed a gun at her torso, and threatened to kill Moses and her son. Moses knew that the gun was loaded because Defendant cocked the gun, causing a bullet to fall onto the bedroom floor.

Things eventually calmed down, with Defendant going into the living room where he fell asleep on the couch. Moses then called a friend to come get her. When the friend arrived, Moses handed her son to the friend out a window, and then crawled out the same window to safety.

Moses fled to a nearby gas station where she called 911. Moses told the dispatcher that Defendant had punched her in the nose and hit her on the heard. She also told the dispatcher that Defendant had threatened to kill her and her son, and that Defendant had his gun out when he made the threat.

Moses was met at the gas station by FWPD officer Joel Saxton ("Saxton"). Moses repeated that she and Defendant had argued, during which Defendant hit her head against their shared home and punched her in the nose. Moses told Saxton that there would be evidence of the fight at the home, including bloody tissues in the bathroom and, critically, a bullet on the floor of the bedroom from when Defendant racked his gun. Moses also stated that Defendant's firearm would be in his right pants pocket.

Saxton returned to his police car, where he determined that Defendant was prohibited from possessing a firearm because of an active protective order. So Saxton and a second officer, Officer Valencia ("Valencia"), went to Defendant's home to investigate. When Defendant emerged from the home—after an extended period of knocking by the officers—Saxton could see the outline of a firearm in Defendant's right pants pocket, just as Moses had foretold. A third officer, Officer Harris ("Harris"), took possession of the firearm.

Defendant was advised of his *Miranda* rights and agreed to talk to officers. Defendant confirmed that he and Moses had argued but denied touching her. He also denied leaving the home that night. He later doubled down, "promising" Saxton that he didn't touch Moses and guaranteeing that no witness would say he touched Moses. Perhaps jokingly, Defendant even denied having a firearm, despite officers seizing it only moments before.

With Defendant secured, Moses was brought back to the residence and a walkthrough was conducted. A .22 caliber round was located on the bedroom floor, again as Moses had stated. This round matched the caliber of the firearm removed from Defendant's pocket. Defendant was arrested on state charges of domestic battery, pointing a firearm, and theft of a firearm.

Over the following days, Defendant made several recorded jail calls to Moses to discuss the incident. During the first call, Moses confronted Defendant with the fact that he punched her in the face and broke her nose. Defendant didn't deny the punch or the injury; he stated only that he didn't mean it. During the second and third calls, Defendant pressured Moses not to cooperate with law enforcement hoping to get the state charges dropped.

Defendant took the stand at the hearing and told a very different tale. He testified that both he and Moses had been drinking at the residence that night. He left to get his son, only to learn on the way that he could not pick up the child until the next day. Rather than immediately return to the residence, Defendant elected to stay in his vehicle and drink. Moses eventually found Defendant in the car and an argument ensued. According to Defendant, he "mushed" Moses in the face to get her away from him.

After the mushing, Defendant stated that the two went into the home—Moses to the bathroom to clean up her nose and him to the living room to watch TV. Defendant then went into

3

the bedroom to talk to Moses, getting on top of her to . . . apologize? In any event, Defendant denied pulling the firearm or using it to threaten Moses.

But what of the bullet on the floor of the bedroom? Ah, Defendant has an explanation. According to Defendant, he fell asleep, only to awaken to loud knocking at the door. Despite the officers announcing themselves, Defendant thought that the person at the door was Moses' brother, there to exact revenge for the injury to his sister. Defendant went to retrieve his gun for protection, racking it to make sure "one was in the head." This, so says Defendant, was how the .22 caliber bullet ended up on the bedroom floor.

**B.**     ***Procedural History***

Defendant pleaded guilty in February. A draft presentence investigation report ("PSR") was prepared (ECF No. 39), to which both the Government and Defendant objected (ECF Nos. 41, 42). The Government objected to the PSR's calculation of the base offense level, believing that it should have been 24 under U.S.S.G. § 2K2.1(a)(2) because Defendant had two prior convictions for a crime of violence or a controlled substance offense. Defendant lodged several objections, including to the four-level enhancement for possession of the firearm in connection with another felony offense under U.S.S.G. § 2K2.1(b)(6)(B) and to the Government's refusal to move for a third acceptance of responsibility point under U.S.S.G. §3E1.1(b).

A revised PSR was prepared before the evidentiary hearing. (ECF No. 46). The revised PSR adopted the Government's position on the base offense level (*id*. at 7), but otherwise was substantively unchanged. Following the evidentiary hearing, the Government objected to the revised PSR. (ECF No. 49). There, the Government argued that Defendant's testimony at the hearing, which the Government felt was perjurious, should result in a two-level enhancement under U.S.S.G. § 3C1.1 and the removal of the two-level reduction for acceptance of responsibility under

U.S.S.G. § 3B1.1(a). All objections have now been fully briefed (ECF Nos. 53, 56, 57) and are ready for ruling.

## II. Legal Discussion

As noted above, there are several objections to the revised PSR. The Court will address each in turn.

### A.    *U.S.S.G. § 2K2.1(a)(2)*

Guidelines Section 2K2.1(a)(2) provides that, for specified firearms offenses, the base offense level should be 24 if "the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." The parties agree that Defendant has one such qualifying offense: a 2021 Indiana conviction for Strangulation under Ind. Code § 35-42-2-9. The dispute is over Defendant's 2012 Maryland conviction for distributing a controlled substance under Md. Code Ann. (Crim. Law) § 5-602 (West 2010).

The relevant Maryland law criminalizes two separate acts. Subsection (1) states that a person may not "distribute or dispense a controlled dangerous substance." Subsection (2) states that a person may not "possess a controlled dangerous substance in sufficient quantity reasonably to indicate under all circumstances an intent to distribute or dispense a controlled dangerous substance." Defendant seizes upon subsection (2), arguing that it is "broader than the Federal definition" of a controlled substance offense[2] and therefore cannot be used under § 2K2.1(a)(2).[3]

---

[2] The Guidelines define a "controlled substance offense" as "an offense under federal or state law . . . that prohibits . . . the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).

[3] Defendant also makes a due process challenge to § 2K2.1(a)(2), arguing that it is unconstitutionally vague. But as the Government notes, this argument is a non-starter, as "the Guidelines are not amenable to a vagueness challenge." *Beckles v. United States*, 580 U.S. 256, 265 (2017).

5

Defendant's argument faces at least two, insurmountable problems. First, Defendant's interpretation runs contrary to precedent. The Fourth Circuit, the federal circuit court primarily responsible for applying Maryland law, has found that a conviction under § 5-602(2) is a qualifying conviction under § 2K2.1(a). *See United States v. Johnson*, 945 F.3d 174, 181-83 (4th Cir. 2019). There, the Fourth Circuit found that the Maryland law "unmistakably requires proof of actual or constructive possession of a controlled substance and the intent to sell or distribute it." *Id*. at 183 (quotations omitted).

While *Johnson* is only instructive, the Court believes it is correct. Federal courts, including the Seventh Circuit, allow a fact finder to infer the intent to distribute based on the amount possessed. *See United States v. Billops*, 43 F.3d 281, 285 n. 4 (7th Cir. 1994), (expert testimony that anything over 10 grams suggested an intent to distribute); *United States v. Lamarr*, 75 F.3d 964, 973 (4th Cir. 1996) (one dose of crack is about 1/10 of a gram, so anyone carrying 5 grams, or 50 street doses, should be considered a dealer); *United States v. Haney*, 23 F.3d 1413, 1418 (8th Cir. 1994) (6.57 grams is a dealer amount). Section 5-602(2), then, is little more than the legislative recognition of this evidentiary presumption.

But Defendant has a bigger problem. Assuming that Defendant's interpretation is correct, the Court would be forced to use the modified categorical approach to determine whether he violated subsection (1) or (2). When a defendant has been convicted of violating a divisible statute, that is, a statute which lists one or more offense elements in the alternative, and one of those elements matches the corresponding element of the generic offense and one does not, the modified categorical approach guides the Court in deciding which alternative was violated. *See Descamps v. United States*, 570 U.S. 254, 257 (2013).

> [T]he modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which

>alternative formed the basis of the defendant's prior conviction. The court can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime.

*Id.*; *see Shepard v. United States*, 544 U.S. 13, 26 (2005) (describing the limited class of documents a court may consult when applying this approach).

The Government has provided the *Shepard* documents related to Defendant's Maryland conviction. (ECF No. 57-1). Those documents show that Defendant was convicted of violating subsection (1), not (2). (*Id*. at 1). Defendant, then, was convicted of distributing or dispensing a controlled dangerous substance, a match to the federal definition of controlled substance offense. The intrigue over subsection (2) is simply a red herring.

Because Defendant's Maryland conviction was for a controlled substance offense, and because his Indiana conviction was undisputedly for a crime of violence, the PSR accurately calculated his base offense level at 24. It is from this starting point that the Court will address the disputed enhancements.

**B.    *U.S.S.G. § 2K2.1(b)(6)(B)***

Under the Guidelines, a four-level enhancement is applied if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. 2K2.1(b)(6)(B). "Another felony offense" means "any federal, state, or local offense . . . punishable by imprisonment of more than a year, regardless of whether a criminal charge was brought, or a conviction obtained." *Id*., cmt. 14(C). The enhancement applies "if the firearm . . . facilitated, or had the potential of facilitating, another felony offense." *Id*., cmt. 14(A). The Government must prove the applicability of the enhancement by a preponderance of the evidence. *United States v. Ewing*, 129 F.3d 430, 434 (7th Cir. 1997). Defendant objects to the application of this enhancement in the PSR.

7

The Government identifies four potential felonies that it believes were facilitated by Defendant's firearm possession: Intimidation, in violation of Ind. Code. § 35-45-2-1; Pointing a Firearm, in violation of Ind. Code § 35-47-4-3; Criminal Recklessness, in violation of Ind. Code § 35-42-2-2; and Domestic Battery, in violation of Ind. Code 35-42-2-1.3. Defendant presents legal arguments related to Intimidation and Domestic Battery, but effectively concedes that, if Moses' testimony is believed, the enhancement is appropriately applied with respect to the other two offenses.

The Court, then, must decide whether it credits Moses' version of events or Defendant's. It credits Moses' version, and by a wide margin. The Court had the opportunity to observe the testimony of both individuals and found Moses far more credible. But the Court's conclusion is not only based on its observations. Rather, only Moses' version adheres to the evidence. As the Government correctly notes, the .22 caliber shell on the bedroom floor is the proverbial "magic bullet" here.

There are two stories about how that bullet got from Defendant's firearm to the bedroom floor. When Moses was interviewed by Sexton at the gas station, she stated that the bullet was ejected when Defendant cocked the gun while on top of her. But according to Defendant, the bullet wasn't even on the floor when this statement was given. Rather, Defendant states that the bullet was ejected from the gun when, after the interview, Sexton and Valencia knocked on the door of the shared residence. As the Government correctly notes, the only way Defendant's version can be credited is if the Court believes Moses is clairvoyant. It must find that Moses could foresee not only that Defendant would grab his gun in response to the officers' knocking, but that he would rack the weapon *and* that he would do so in the bedroom. The Court finds it far more likely that Moses is truthful than that she is psychic.

Having credited Moses' testimony, the Court finds that Defendant pointed the subject firearm at Moses during their dispute. This satisfies the elements of both Indiana's Pointing a Firearm and Criminal Recklessness statutes, and Defendant does not argue otherwise. The PSR properly applied the four-level enhancement under § 2K2.1(b)(6)(B).

C.  *U.S.S.G. § 3C1.1*

Under U.S.S.G. § 3C1.1, a defendant's offense level should be enhanced by two levels if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction." Committing, suborning, or attempting to suborn perjury constitutes an obstruction of justice under § 3C1.1. *United States v. Gonzalez-Mendoza*, 584 F.3d 726, 730 (7th Cir. 2009) (providing materially false information to a judge is also grounds for the application of the enhancement. U.S.S.G. § 3C1.1 cmt. n. 4(f)). "Perjury" for sentencing enhancement purposes is equivalent to that defined in 18 U.S.C. § 1621. *See United States v. Dunnigan*, 507 U.S. 87, 94 (1993); *United States v. Arambula*, 238 F.3d 865, 868 (7th Cir. 2001). The enhancement is properly applied only when a defendant gives "false testimony under oath or affirmation concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Arambula*, 238 F.3d at 868; *see also Gonzalez-Mendoza*, 584 F.3d at 730.

The Government argues that Defendant's hearing testimony was perjury, supporting the enhancement. The Court agrees. As discussed above, the Court finds Moses' testimony to be credible, and Defendant's to be incredible. Only Moses' testimony is consistent with the bullet evidence, and only Moses appeared credible while testifying in Court. The Court finds, then, that Defendant's testimony was untruthful.

The only issue, then, is whether Defendant's false testimony constitutes perjury. Defendant does not argue that the statements were immaterial, but argues that they were false "because [Defendant] had been drinking" and "doesn't remember the evening that well." (ECF No. 56 at 12-13).

But, as the Government notes, Defendant can't have it both ways. He gave detailed testimony of that night, describing he and Moses' activities before, during, and after the violent confrontation. He falsely described, in detail, the actions he took upon hearing the officers knocking at his door. Defendant cannot ask the Court to credit his detailed accounts while arguing that he doesn't remember those same events. The Court finds that Defendant gave false testimony with the willful intent to provide false testimony, and therefore concludes that the enhancement under § 3C1.1 should apply.

**D.**     *U.S.S.G. § 3E1.1(a)*

Under the Guidelines, a defendant is allowed a two-level decrease "if the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1. Defendant pleaded guilty, which is generally enough for this reduction. But the Court's conclusion that Defendant obstructed justice changes that calculus.

Although a court may give both an acceptance-of-responsibility reduction under § 3E1.1 and an increase under § 3C1.1 for obstructing justice, *see*, *e.g.*, *United States v. Arnaout*, 431 F.3d 994, 998 (7th Cir. 2005), "[c]onduct resulting in an adjustment under § 3C1.1 [for obstructing justice] . . . ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." § 3E1.1, cmt. n. 4. Only in "extraordinary cases" should a court adjust under both sections of the guidelines. § 3E1.1, cmt. n. 4; *see also United States v. Shearer*, 479 F.3d 478, 485

n. 1 (7th Cir. 2007) (noting that reduction for acceptance of responsibility would generally be "improper" when the defendant received an enhancement for obstruction of justice).

Defendant does not argue that this is an "extraordinary case," nor does the Court find it to be one. Instead, this is a simple case in which the Defendant chose to lie to reduce his sentencing exposure. His perjury is ample evidence that Defendant has not accepted responsibility. The Court finds that Defendant is not entitled to a two-level reduction for acceptance of responsibility under § 3E1.1(a).

**E.**     ***U.S.S.G. § 3E1.1(b)***

Finally, Defendant objects to the Government's refusal to move for a third acceptance of responsibility level reduction under § 3E1.1(b). That subsection provides that:

> If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

Defendant argues that he timely pleaded guilty, and any delay in that plea is properly attributable to his counsel, not him.

But a discussion of the timeliness of his plea is irrelevant. The Court's conclusion that Defendant is not eligible for the two-level reduction under § 3E1.1(a) disqualifies Defendant from a third level under subsection (b), as subsection (b) applies only "if the defendant qualifies for a decrease under subsection (a)." Moreover, the reduction under subsection (b) "may only be granted upon a formal motion by the Government at the time of sentence," § 3E1.1, cmt. n. 6, leaving the Court with no authority to grant the reduction on its own. Defendant is not entitled to an additional one-level reduction under § 3E1.1(b).

11

### III. Conclusion

For these reasons, the Court finds:

1. Defendant's base offense level is 24.

2. A two-level enhancement should be applied under U.S.S.G. § 2K2.1(b)(4)(A) because the firearm was stolen.[4]

3. A four-level enhancement should be applied under U.S.S.G. § 2K2.1(b)(6)(B) because Defendant possessed the firearm in connection with another felony offense, including Pointing a Firearm at Another Person and Criminal Recklessness.

4. A two-level enhancement should be applied under U.S.S.G. § 3C1.1 obstructed or impeded the administration of justice.

5. Defendant should receive no reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) or (b).

The probation officer is DIRECTED to prepare a revised PSR consistent with this Opinion and Order.

SO ORDERED on December 5, 2024.

                                                              s/ *Holly A. Brady*
                                                               CHIEF JUDGE HOLLY A. BRADY
                                                               UNITED STATES DISTRICT JUDGE

---

[4] Defendant has inconsistently lodged an objection to this enhancement but, based on Defendant's most recent filing, the Court concludes that Defendant has abandoned this objection. (ECF No. 58).